Submitted on briefs without argument November 23, defendant disbarred for three months December 1, 1914.

## STATE EX REL. *v.* GRAVES.

(144 Pac. 484.)

**Attorney and Client—Grounds for Suspension or Disbarment—Disorderly Conduct.**

1. It was a ground for disciplining an attorney that he was an active member of a lawless assemblage of citizens, who took from a city jail certain persons confined therein, forcibly carried them some distance, from the city, and, after compelling them to kiss the American flag, ordered them not to return, though such persons had used intemperate and seditious language, denouncing the United States flag and government, and had made themselves generally obnoxious to a large majority of the community; but where such attorney had theretofore been an estimable, law-abiding citizen, and peaceable member of society, and in his relations to his clients had always demeaned himself as an honorable member of society and of his profession, suspension from practice for three months would be sufficient punishment for this single act, committed under excitement and a mistaken sense of patriotism.

[As to crimes and other misconduct which are causes for disbarment, see note in 42 Am. Rep. 557.]

Original proceedings in Supreme Court.

This is an original disbarment proceeding by the State, on relation of Clarence H. McLaughlin, against Robert O. Graves. Defendant suspended from practice for three months.

DEFENDANT SUSPENDED FOR THREE MONTHS.

For the State of Oregon there was a brief submitted over the name of *Mr. C. H. McLaughlin.*

For defendant there was a brief submitted over the names of *Mr. C. S. McKnight, Mr. A. J. Sherwood* and *Mr. Joseph W. Bennett.*

In Banc. Opinion by MR. CHIEF JUSTICE McBRIDE.

In August, 1913, one C. H. McLaughlin, as relator, filed a complaint charging Robert O. Graves with conduct unbecoming an attorney, which complaint is as follows:

"In the Supreme Court of the State of Oregon.
"The State of Oregon, on the Relation of C. H. Mc-
Laughlin, Against Robert O. Graves.
"Coos County,   .
   Oregon State—ss.:
"C. H. McLaughlin, being sworn on oath says that on June 25, 1913, at the City of Marshfield, Coos County, Oregon, a large concourse of men unlawfully assembled as a mob, and as such mob forcibly and violently took possession of the persons of J. W. Edgeworth, Wesley Everett and Fred Roberts, and with force and against the will of said persons marched them through the streets of Marshfield, and then put them upon a small gasoline launch and conveyed them down and across the bay, at which place they were by said mob taken off said launch, and assaulted and beaten and kicked, and subjected to many indignities and insults, and were then compelled to leave Coos

County, and ordered by said mob to never return.
That said Robert O. Graves at all of the time herein
mentioned was a member of said mob, acting as its
spokesman and leader, and directing its actions. Said
Robert O. Graves is and was at all times mentioned
herein a member of the bar of the State of Oregon,
admitted to practice in all the courts of the state; and
I charge that his conduct as herein stated was vio-
lative of his duty and his oath as an attorney at law,
and was unbecoming a member of the legal profession.
Wherefore I request this honorable court to proceed
against him for disbarment.

"C. H. McLAUGHLIN.

"Subscribed and sworn this 14th day of August,
1913, before me.                                    W. J. RUST,

"Notary Public for Oregon.

"[Notarial Seal.]"

The matter was referred for the purpose of taking
the testimony, which was submitted and filed in this
court December 9, 1913. We have examined the evi-
dence, and find the facts to be that the parties whom
it is charged were forcibly deported from Marshfield
were persons connected with that society known as
Industrial Workers of the World, and that for some
time before the alleged deportation they or their asso-
ciates had been attempting to promote and organize
a general strike among the laborers employed in the
mills and other industries in and around Marshfield;
that in pursuance of this object they had used intem-
perate and seditious language, denouncing the United
States flag and government, and made themselves gen-
erally obnoxious to a large majority of the community,
to the extent that upon June 25, 1913, two of them,
J. W. Edgeworth and Wesley Everett, were arrested
and thrown into jail, the particular charge against
them not appearing in the testimony; that a mob com-
posed chiefly of citizens and business men assembled

and forcibly took these two from the jail, placed them aboard a launch, and transported them a distance from the city, and, after requiring them to kiss the American flag, ordered them to leave the county and not return, with which order they complied; that on the same day Fred Roberts, an associate of Edgeworth and Everett, began publicly to denounce the deportation of these persons, using profane and boisterous language. Whereupon he was arrested and thrown into jail, for the reason or upon the pretext that he was guilty of disorderly conduct, and in a short time a mob composed in part of the same persons went to the jail, and forcibly took him therefrom, and deported him in the same way that Edgeworth had been deported. Taking the testimony as a whole, although there is some conflict, we are of the opinion that no personal violence was used upon any of these three men beyond actually seizing them and deporting them against their will, and that the allegation that they were kicked and beaten and bruised is not borne out by the testimony.

While the conduct of these men was probably insulting to the feelings of the community, and their denunciation of the government and the flag calculated to provoke decent citizens to wrath and to invite breaches of the peace, this furnishes no legal justification for the course pursued toward them. This is a land where the law is supreme, and entirely adequate to the protection of society, and there is no necessity to override the law under the pretext of maintaining it. If the parties deported were actually guilty of such public conduct as threatened the peace and good order of the city, no doubt there existed in the ordinances of Marshfield penalties for disorderly conduct, which would have been an effectual remedy against its

repetition.   When a man publicly insults the flag and denounces the institutions of his country, he is a disorderly and bad citizen; but it is a mistaken patriotism that seeks to suppress one breach of the public peace by perpetrating another, however great the provocation.   In this view of the case, the assembly of persons who deported Edgeworth, Everett and Roberts, even though it may have been composed of men ordinarily good and law-abiding citizens, was a lawless assemblage.

The defendant was a member of this assemblage, and while not, perhaps, the leader or the most active member, he was not inactive.   An attorney is an officer of the court, sworn to obey the laws, and upon occasions of this kind it is his duty, if present at all, to uphold the law and counsel peaceable and lawful methods, and what might be excusable in the conduct of a citizen unacquainted with the law cannot be overlooked in an attorney.   This being so, we must find that in the matter at bar he has been guilty of conduct unbecoming his profession.   We take into consideration, however, the fact that the testimony of many witnesses shows him to have hitherto been an estimable, law-abiding citizen, and peaceable member of society; that in his relations to his clients he has always demeaned himself as an honorable member of society and of his profession; and we therefore conclude that for this single act committed under excitement and a mistaken sense of patriotism, it would be improper to deprive him altogether of his means of livelihood which he derives from his profession.

It is the judgment of the court that he be suspended from practice in this court for a period of three months.

DEFENDANT SUSPENDED FOR THREE MONTHS.